# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| STEPHANIE PLUNKETT | CIVIL ACTION NO. 24-1050 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| WAL-MART INC, ET AL. | MAGISTRATE JUDGE MCCLUSKY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by Defendants Wal-Mart Inc. and Wal-Mart Louisiana LLC (collectively, "Wal-Mart"). See Record Document 18. Plaintiff Stephanie Plunkett ("Plunkett") opposed. See Record Document 21. Wal-Mart replied. See Record Document 22. For the reasons stated below, Wal-Mart's Motion for Summary Judgment (Record Document 18) is **GRANTED**, and all claims asserted by Plunkett against Wal-Mart are **DISMISSED WITH PREJUDICE**.

## BACKGROUND

This lawsuit arises out of an alleged slip-and-fall that occurred in a Wal-Mart Supercenter located at 2536 Airline Drive, Bossier City, Louisiana on or about July 15, 2023. See Record Document 1-2 at 5–6. Plunkett alleges that there was a large puddle of standing water and ice on the sales floor of the store, and Wal-Mart employees knew there was a large puddle of water and ice in this area. See id. at ¶¶ 4, 5. Additionally, she claims Wal-Mart employees knew the large puddle of water and ice created a hazard for customers and was dangerous. See id. at ¶¶ 6–7. She advances that these employees failed to place any wet floor signs near or around the wet floor to warn customers of the hazard. See id. at ¶ 8. As a result of Wal-Mart's alleged actions and/or omissions, Plunkett

claims she walked across the large puddle of water and ice, slipped and fell, and sustained injuries. See id. at ¶¶10–12. She asserts that Wal-Mart is responsible for her past and future medical expenses; pain and suffering; mental pain and anguish; loss of enjoyment of life; scarring and disfigurement; functional impairment/disability; and loss of wages/loss of future earning capacity. See id. at ¶ 14.

## LAW AND ANALYSIS

**I. Summary Judgment Standard.**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552–53. (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart La., L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trail that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id.

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323, 106 S. Ct. 2553). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). There is no genuine issue for trial—and thus, a grant of summary judgment is warranted—when the record as a whole "could not lead a rational trier of fact to find for the moving party…." Id.

## II. Louisiana's Merchant Liability Statute ("LMLA").

In a diversity case such as this one, federal courts apply state substantive law. See Moore v. State Farm Fire & Cas. Co., 556 F.3d 264, 269 (5th Cir. 2009); see also Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938). Therefore, liability in this case is governed by the LMLA. Louisiana Revised Statues § 2800.6(A) imposes a duty of care on a merchant to those lawfully on its premises, "to keep the premises free of any hazardous conditions which reasonably might give rise to damage." LA. REV. STAT. § 9:2800.6(A). When a negligence claim is brought against a merchant based on injuries sustained in a fall caused by a condition of the merchant's premises, a plaintiff bears the burden of providing the existence of a hazardous condition and that:

> 1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> 2) The merchant either created or had actual or constructive notice of the condition which cause the damage, prior to the occurrence.
>
> 3) The merchant failed to exercise reasonable care.

LA. REV. STAT. § 9:2800.6(B). Importantly, a plaintiff bears the burden of proof as to each of these three elements. In fact, "[t]he burden of proof does not shift to the defendant at any point, and failure to prove any one of these elements negates a plaintiff's cause of action." Melancon v. Popeye's Famous Fried Chicken, 2010-1109, p. 3 (La. App. 3 Cir. 3/16/11), 59 So. 3d 513, 515 (citing White v. Wal-Mart Stores, Inc., 97-0393 (La. 9/9/97), 699 So. 2d 1081; Ferrant v. Lowe's Home Centers, Inc., 494 Fed. Appx. 458, 460 (5th Cir. 2012)).

With respect to the second element, the LMLA defines constructive notice to mean that the plaintiff "has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." LA. REV. STAT. § 9:2800.6(C)(1). The statute further clarifies that "[t]he presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." Id. The jurisprudence has explained that constructive notice includes a temporal element in which the plaintiff must prove the condition existed for "some period of time" prior to the fall. See White, 699 So. 2d at 1084. While the time period "need not be specific in minutes or hours," the plaintiff must come forward with some positive evidence to satisfy the temporal element. Id.

**III. Summary of the Arguments.**

Wal-Mart contends that Plunkett cannot show it had sufficient knowledge or notice of any alleged defect on the floor prior to the fall. See Record Document 18 at 1. Wal-Mart also argues she cannot establish it created an unreasonably dangerous condition

near the Vision Center and general merchandise entryway. See id. at 17. Wal-Mart supports its argument with Plunkett's deposition testimony, in which she stated that she was not looking at the floor prior to the fall and did not see water or ice on the ground before the fall. See id. Thus, Wal-Mart submits that she has not pointed to anything in the record to demonstrate that someone spilled something on the floor. See id. Wal-Mart avers that her speculative allegations as to the presence of the substance on the floor are insufficient to defeat summary judgment. See id. at 18. Additional support for Wal-Mart's arguments comes from Asset Protection Operations Coach Chase Weaver's ("Weaver") affidavit, in which he states that neither he nor any other Wal-Mart employee saw a substance on the floor prior to the accident. See id.

Wal-Mart also asserts that Plunkett cannot prove it had actual or constructive notice of the wet substance on the floor. See id. Wal-Mart supports this argument with Plunkett's deposition testimony, where she stated that she does not know how the wet substance got on the floor or how long it had been present. See id. Wal-Mart again points to Weaver's affidavit, in which he states that in the hour preceding the fall, approximately 70 people walked through the area, and no one notified any Wal-Mart employee that there was an unreasonably dangerous condition. See id. at 19. Wal-Mart submits that Plunkett's allegation claiming there was a substance on the floor does not establish that this substance was present for any particular amount of time. See id. at 20. Because there is no positive evidence to establish the temporal element for constructive notice or to establish that Wal-Mart created an unreasonably dangerous condition, Wal-Mart contends its Motion should be granted. See id. at 21.

Plunkett opposes, asserting that genuine issues of material fact exist regarding whether Wal-Mart had constructive notice of the hazardous condition that caused her injuries. See Record Document 21 at 1. She argues that physical evidence, such as photographs taken immediately after the accident showing partially melted ice, a cup lid, and a straw, along with her wet clothing, demonstrates that the hazardous condition existed for some period of time before the fall. See id. She contends that she has met the temporal element required by Louisiana law by showing that the condition existed for some period of time before the fall. See Record Document 21-1 at 10.

Additionally, Plunkett submits that the Wal-Mart Incident Report completed by Assistant Manager Dustie Worsham ("Worsham") supports her argument that there is a genuine issue of material fact as to whether Wal-Mart should have detected the ice and water prior to the fall. See id. at 15. She also points to Weaver's statement about the high volume of foot traffic to support her argument that the Wal-Mart employees should have increased their vigilance to look out for potential hazards. See id. at 16. Ultimately, Plunkett claims that Wal-Mart's safety policies, the high-traffic location of the spill, and established jurisprudence regarding employee presence all create genuine issues of material fact that must be resolved by a jury rather than summary judgment practice. See id. at 18.

Wal-Mart replies, reiterating that Plunkett cannot establish that it either created or had sufficient notice of the condition on the floor prior to the fall. See Record Document 22 at 1. Wal-Mart asserts that her opposition fails to controvert the facts established by its Motion. See id. at 2. It contends that none of the evidence cited by Plunkett shows she will be able to meet her burden of proof. See id. Wal-Mart submits that she has failed to

6

produce factual support to establish the substance on the floor existed for a sufficient period of time prior to the accident. See id. Wal-Mart avers that the presence of the water, ice, cup lid, or straw in the photographs does not prove it had constructive notice that these substances and items were there prior to the fall. See id. at 3. Wal-Mart advances that these photographs and Plunkett's testimony are mere speculation and do not demonstrate that the condition existed for some time before the fall. See id. at 4.

**IV. Analysis.**

As stated above, this case is centered around the second element of the LMLA, specifically whether Wal-Mart had constructive notice of the condition. After a thorough review of the summary judgment record, including the surveillance video and photographs, the Court finds summary judgment proper. Plunkett has not provided sufficient positive evidence to survive summary judgment on the issue of constructive notice. During her deposition, she testified that she slipped and fell on chunks of ice, which she claims is evident from the photographs her husband took after the fall. See Record Document 18-3 at 1. However, she also testified that she has no knowledge as to how the ice got on the floor, how long it had been on the floor, or if any Wal-Mart employee knew the ice was on the floor. See id. at 1–2. Plunkett admits in her deposition that she cannot see any water or ice on the floor in the surveillance video. See id. at 4. Moreover, she states that prior to the accident, she did not see any water or ice on the floor. See id. at 5.

From the surveillance video and photographs, there is no evidence to support the notion that water or ice existed before Plunkett's fall. The video does not show any water, ice, a cup lid, or a straw present, and the photographs of the floor were taken after the

7

fall. Plunkett's speculation, without further evidence, does not prove that any Wal-Mart employee was aware of a substance on the ground. In Jones v. U.S., the Fifth Circuit reasoned that a non-movant cannot overcome "summary judgment by presenting 'speculation, improbable inferences, or unsubstantiated assertions.'" 936 F.3d 318, 321 (5th Cir. 2019). Thus, her unsubstantiated assertions do not negate summary judgment.

Plunkett also argues that since she fell in a high-traffic area, Wal-Mart employees should have been more alert. This Court in Peterson v. Brookshire Grocery Co. held that "[t]he fact that numerous customers traversed the aisle and some appear to walk directly over the area where [plaintiff] fell only weakens [plaintiff's] argument that the condition existed for a period of time prior to her fall." No. 16-1646, 2017 WL 5147615, at *4 (W.D. La. Oct. 6, 2017). Thus, the fact that approximately 70 people traversed the area at issue with no problem favors Wal-Mart instead of Plunkett. The surveillance video and photographs, combined with Plunkett's deposition testimony, her husband's deposition testimony, and Weaver's affidavit, supports the conclusion that Wal-Mart did not have constructive notice of the condition that caused the fall. Plunkett has not satisfied her burden under the LMLA, which requires her to put forth positive evidence that Wal-Mart had constructive notice.

Despite Plunkett's speculation that the ice was on the floor, she "is clearly unable to make a positive showing that the condition did exist for some period of time [prior] to [her] fall." Babin v. Winn Dixie La., Inc., 2000-0078 (La. 6/30/00), 764 So.2d 37, 40. She does not know where the ice came from or how long it had been on the floor. Her assertions are not corroborated by the surveillance video or photographs. Even though Plunkett's husband testified that he saw water and ice on the floor, he only noticed after

8

the fall. See Record Document 21-4 at 1–2. He did not know how long the water or ice had been on the floor, whether any of the Wal-Mart employees knew that these substances were on the floor, or where the water or ice came from. See id. at 2. He also could not remember seeing a cup lid or straw on the floor where Plunkett fell. See id. Wal-Mart's arguments are further supported by Weaver's statement that neither he nor any of the Wal-Mart employees present that day were aware of any substance on the floor prior to the accident. See Record Document 18-4 at 1. After his review of the surveillance video, Weaver stated that he did not see anyone drop a cup of ice on the floor. See id. at 2. Therefore, the Court finds there a no genuine issues of material fact, and Plunkett has failed to overcome summary judgment.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Wal-Mart's Motion for Summary Judgment (Record Document 18) is **GRANTED**. There are no genuine issues of material fact, and Wal-Mart is entitled to judgment as a matter of law. Therefore, all of Plunkett's claims are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 13th day of May, 2025.

_____
UNITED STATES DISTRICT COURT JUDGE